In the Matter of the Application of WILLISTON BENEDICT, as Executor, etc., of RUSSELL BENEDICT, Deceased, and of MAY S. BENEDICT, Deceased, Respondent, for a Peremptory Order of Mandamus against FIORELLO H. LAGUARDIA and Others, Constituting the Board of Estimate and Apportionment of the City of New York as Head and Trustees of the " New York City Employees' Retirement System," Appellants.

Second Department, December 3, 1937.

*Henry J. Shields* [*Paul Windels, Corporation Counsel,* and *Paxton Blair* with him on the brief], for the appellants.

*Isidor Neuwirth* [*Edmund J. Pickup* with him on the brief], for the respondent.

CARSWELL, J.   We have here a problem of statutory interpretation.   To find the answer to it requires an analysis of the charter provisions which create the New York City Employees' Retire-

ment System and regulate its operation (Greater New York Charter, chap. XXVI).

The defendants are trustees of the Retirement System because of their membership in the board of estimate and apportionment of the city of New York. The petitioner is executor of Russell Benedict, deceased, and of the latter's deceased widow, May S. Benedict. He has obtained a peremptory order of mandamus requiring the payment of $2,978.44 (being the amount contributed by Russell Benedict to the funds, with interest to January 1, 1926) and also of the sum of $6,666.66, purported to be owing under section 1717 of the charter as a death benefit computed on decedent's salary. It is not manifest whether the former payment was directed on the theory that Russell Benedict was a " member " of the Retirement System or on the theory that he was a " beneficiary " thereof. The latter payment has been directed on the theory that Russell Benedict was a " member " of the Retirement System at his death. If he was not then a member, that direction for payment may not be sustained. The petitioner may prevail and obtain such payments as may properly be directed, only on the theory that Russell Benedict was either a " beneficiary " or a " member." There may not be a commingling of claimed rights on both theories. It is necessary, therefore, to determine the status of Russell Benedict at the time of his death, so far as the Retirement System is concerned.

Russell Benedict was elected a Supreme Court justice in 1911, taking office on January 1, 1912, for a term expiring December 31, 1925. Before the expiration of his term, the Legislature enacted chapter XXVI of the Greater New York Charter (Laws of 1920, chap. 427), authorizing the creation of a Retirement System not earlier than October 1, 1920. To become a " member," one had to be in the " city service " (§ 1700, subd. 6; § 1702; § 1700, subd. 3). Part of Justice Benedict's salary was paid by the city of New York; hence he was in the " city service." An obligation of membership was the consenting to deductions from salary at prescribed rates. (§ 1702, subd. 1, par. [b].) Justice Benedict consented by joining the system on January 1, 1921. He thus became a " member." His contributions, at the rate prescribed, were thereafter duly deducted. Before December 1, 1925, as his term as Supreme Court justice was soon to expire, he applied for a retirement allowance, and on December 18, 1925, the application was granted, to take effect January 1, 1926. He applied for retirement under section 1720. He had a choice thereunder of four options. He asked for and was given the benefit of option 1. So far as pertinent, section 1720 reads:

" Until the first payment on account of any benefit is made, the beneficiary * * * may elect to receive such benefit in a retirement allowance payable throughout life, or the beneficiary * * * may then elect to receive the actuarial equivalent at that time of his annuity, his pension, or his retirement allowance in a lesser annuity or a lesser pension or a lesser retirement allowance, payable throughout life with the provision that:

" Option 1. If he die before he has received in payments the present value of his annuity, his pension, or his retirement allowance, as it was at the time of his retirement, the balance shall be paid to his legal representatives or to such person as the beneficiary * * * has nominated or shall nominate by written designation duly acknowledged and filed with the board of estimate and apportionment."

Pursuant to the benefits accorded, transfers were made and reserves were set up of $10,376.58 in the pension fund and $2,978.44 in the annuity reserve fund; the total being $13,355.02. Payment to him of a " retirement allowance " of $1,236.89 per annum was authorized — $961.01 from the pension fund and $275.88 from the annuity reserve fund. A " retirement allowance " is a " pension " plus an " annuity." (§ 1700, subd. 15.)

As a consequence, on December 31, 1925, Justice Benedict ceased to be a " member " and became a " beneficiary " of the Retirement System. The latter is defined (§ 1700, subd. 8) as a person " in receipt of a pension, an annuity, a retirement allowance, a death benefit or any other benefit provided by this chapter." It is not claimed he became a " former member." A " former member " is not defined in the statute but seems to be one who has ceased to contribute to the funds and has not been granted a retirement allowance (§ 1717). The decedent, as will presently appear, never lost, in whole or part, his right to his " annuity." He, on January 1, 1926, lost his status as a " member " when he became a " beneficiary " of the Retirement System. On that day he was entitled to be " in receipt of * * * a retirement allowance."

On January 1, 1926, the day on which his right to the retirement allowance arose, Russell Benedict was appointed an official referee by this court and thereafter received a salary as an official referee, paid in part by the city of New York. He continued as an official referee until November 29, 1936, when he died. During his incumbency as official referee he made no contributions from his salary to the Retirement System. Contributions are an indispensable prerequisite to one's status as a member. Likewise, he received no payments from the Retirement System pursuant to the " retirement allowance." The withholding of all payments was based on

section 1560 of the Greater New York Charter. That section provides that when a person receiving a pension accepts or holds office under the State or city of New York, " the payment of said *pension* shall be suspended and *forfeited* during and for the time he shall hold such office."

The trustees, each year since January 1, 1926, have deducted from the " present value of his annuity, his pension, *or* his retirement allowance " (§ 1720, option 1), the entire pension and the entire annuity, which compose the retirement allowance, so that when the beneficiary died on November 29, 1936, and his widow died on December 3, 1936, both reserve funds were depleted. For this reason the trustees have refused petitioner's demand for " the balance " of the " present value " of these funds as of January 1, 1926.

These deductions by the trustees were authorized by section 1560 so far as they related to the " pension " part of the retirement allowance. They were unauthorized so far as they related to the " annuity " part of the retirement allowance. Penalty and forfeiture provisions are to be strictly construed. The section specifically confines the forfeiture to the " pension " which would otherwise be payable. It does not purport to require the forfeiture of the annuity otherwise payable, or of a " retirement allowance " which includes the element of annuity. When Justice Benedict, in his status as a beneficiary entitled to a retirement allowance which included both a pension and an annuity, saw fit, as a voluntary act, to accept appointment as an official referee, he subjected himself to section 1560 so far as that section provided for a forfeiture of his " pension " during the period he continued to serve as an official referee, but he did not subject himself to a forfeiture beyond that. A " pension " is a payment derived from appropriations made by the city (§ 1700, subd. 13) and is separate and distinct from an " annuity," which is a payment derived from contributions made by a member. (§ 1700, subd. 14.) Section 1560 confines itself to " pension " and makes no mention of an " annuity " or a " retirement allowance."

Accordingly, the trustees were entitled, under section 1560, to deduct from the reserve set up to meet the pension payment, the amount of the annual pension thus forfeited. This forfeiture continued from January 1, 1926, to November 29, 1936, and exhausted the reserve of $10,376.58 set up to meet the payments under the option selected by the decedent beneficiary. The trustees, however, had no right to deduct the annuity payment of $275.88 from the annuity reserve set up on January 1, 1926; hence, the petitioner, as the representative of the beneficiary and of his nominee

or widow, was entitled, under section 1720, option 1, to the balance of " the present value of his [decedent's] annuity " as of January 1, 1926, which has never been subjected to any payments made to the beneficiary or his nominee. Therefore, the order, so far as it directs the payment of $2,978.44, is proper.

The provision in the order directing the payment of the death benefit of $6,666.66 cannot be sustained on the status of the decedent as a " beneficiary." No provision for any such payment is made in section 1720, relating to beneficiaries. This part of the order purports to be under section 1717. That section concerns a " member " or a " former member." The decedent after he acquired and retained the status of a " beneficiary," was neither a " member " nor a " former member " within the purview of chapter XXVI. The order, therefore, so far as it directs a payment of $6,666.66, computed on the city's payment of part of decedent's salary as official referee, is unauthorized and that provision must be struck from the order.

The order should be modified by striking therefrom the third ordering paragraph and by striking from the first ordering paragraph the words " in all respects." As so modified, the order should be affirmed, without costs, as a matter of law and not in the exercise of discretion.

Present — HAGARTY, CARSWELL, DAVIS, JOHNSTON and ADEL, JJ.

Peremptory mandamus order modified by striking therefrom the third ordering paragraph and by striking from the first ordering paragraph the words " in all respects." As so modified, the order is unanimously affirmed, without costs, as a matter of law and not in the exercise of discretion.