In the Matter of DANIEL O'CONNOR, Respondent, *v.* NEW YORK CITY EMPLOYEES' RETIREMENT SYSTEM OF THE CITY OF NEW YORK, Appellant.

First Department, June 21, 1973.

*Eric J. Byrne* of counsel (*Stanley Buchsbaum* with him on the brief; *Norman Redlich, Corporation Counsel*), for appellant.

*Joseph A. Monica* of counsel (*Monica & Feury,* attorneys), for respondent.

TILZER, J. In this article 78 proceeding the New York City Employees' Retirement System appeals from a judgment directing that petitioner be paid death benefits pursuant to Option

1.a of section B3–46.0 of the Administrative Code of the City of New York.

Petitioner's deceased wife, Catherine O'Connor, retired from city service in October, 1968. On July 14, 1969, she filed with the Retirement System a form entitled '' Selection of Benefits Under Option Four '', which provided in part that a lump sum of $2,000 would be paid on her death to her husband — the petitioner herein. The selection of benefits form contained a clause providing that if the retiree died '' before the first payment on account of retirement allowance, a benefit under Option 1 shall be paid in lieu of the benefit under Option [Four].'' Such clause was authorized by section B3–36.0 (subd. 4, par. [i]) of the Administrative Code. On August 25, 1969, the Comptroller's office duly mailed the first check (in the amount of $978.02) on account of retirement allowance. The check was sent to Mrs. O'Connor at the address listed in the files of the Retirement System. It appears, however, that on August 12, 1969, Mrs. O'Connor had departed for Ireland where she died on September 2, 1969. The Retirement System had never been informed of any change of address and it does not appear that the decedent had made arrangements to have mail forwarded to her. Thereafter, the petitioner notified the Retirement System of his election to receive benefits under Option 1 instead of Option 4. His attempted election was rejected, it being the respondent's contention that the first payment on account had been made and consequently, Option 4 had become operative.

The issue to be determined is whether '' the first payment on account '' had been made, thus precluding an election to take under Option 1, although the check itself was never cashed and not *actually* received by the retiree.

A similar problem was considered by the Court of Appeals in *Connolly* v. *Connolly* (9 N Y 2d 272). In that case the decedent had chosen retirement benefits under an option providing in effect, that if he died before receiving the full balance of his original account, the remainder would be paid to his named beneficiaries. At the time of the decedent's death, he had received several checks totaling $1,985.05, but had not cashed any of them. The issue before the Court of Appeals was as follows (p. 276): '' Were the amounts represented by the uncashed checks ' received ' by Sylvester Connolly during his lifetime and so part of his testamentary estate, or, because the checks went uncashed, did the amount thereof remain at Sylvester Connolly's death part of the retirement account balance not ' paid ' out during his life? ''

In concluding that the amounts represented by the uncashed checks were received by decedent during his lifetime, the Court of Appeals stated (pp. 276–277) : " Inapplicable is the general law as to whether or not a check imports payment. The real question is as to the meaning and purpose of the arrangement made by Sylvester Connolly with the Retirement System when he chose his option. We agree with the Appellate Term and the Appellate Division dissent. True, the relationship between Connolly and the Retirement System was that of creditor and debtor but that does not answer our question. Each time Connolly received a monthly pension check that amount became his and the account was decreased accordingly. The fair and common-sense meaning of ' Option 1 ' is that there shall go to the named beneficiaries after the member's death an amount equal only to the original account less the monthly allowances accrued to the member during his life ".

The reasoning of the Court of Appeals in the *Connolly* case (*supra*) points to the conclusion herein that " the first payment on account " was made. The obvious purpose of the provision permitting a change of option until " the first payment on account ", is to provide a definite point of time at which the obligations become fixed. Nor may the retiree be permitted to extend that time at his own will, for such would defeat the very purpose of the provision. As stated in the dissent at the Appellate Division, in the *Connolly* case (adopted by the Court of Appeals), " the obligation of the Retirement System was to make payments to the retired employee during his lifetime and on his death to his designees. The retired member may not vary that obligation by refusing or postponing receipt of payments." (*Connolly* v. *Connolly*, 8 A D 2d 729). Here, the check was properly mailed to the address designated by the retiree and there is no indication that the check was not actually delivered to such address. Only the decedent's unilateral action in moving or departing from her designated address, without informing the Retirement System, prevented the actual receipt of the check. Such action, as already noted, may not serve to vary the Retirement System's obligations or extend the time for changing options. Hence, under these facts, the constructive receipt of the check having been established, we must conclude that " the first payment on account " was made during the decedent's lifetime.

Accordingly, the judgment entered January 26, 1972 should be reversed on the law and the facts and the petition dismissed without costs or disbursements.

MARKEWICH, J. P., KUPFERMAN and STEUER, JJ., concur; NUNEZ, J., dissents and would affirm on opinion of CHIMERA, J., at Special Term.

Judgment, Supreme Court, New York County, entered on January 26, 1972, reversed, on the law and the facts, and vacated and the petition dismissed, without costs and without disbursements.